

**FILED**

11/13/2014

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**RECEIVED**

OCT 2 0 2014 _MB_

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Douglas Mock

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Ill. City of Chicago
Police Officers;
  Afredo Castro, Badge# 9609
  Aaron Chatman, Badge# 21313 .

Judge Manish S. Shah
Magistrate Judge Kim

Case No: 14CV3274
(To be supplied by the Clerk of this Court)

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**          **AMENDED COMPLAINT**

✓          **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code** (state, county, or municipal defendants)

_____          **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code** (federal defendants)

_____          **OTHER** (cite statute, if known)

_BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY._

1 of 10

I. **Plaintiff(s):**

A. Name: Douglas Mock

B. List all aliases: None

C. Prisoner identification number: 20120601098

D. Place of present confinement: Chi., Cook County Dept. of Correctional Jail

E. Address: P.O. Box 089002 /Chi. Ill. 60608
2650 S. California Chi, Ill. 60608

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A. Defendant: City of Chi. Police Alfredo Castro Badge# 9609

Title: Police Officer

Place of Employment: 103 rd. Luellea Chi, Ill. 60617

B. Defendant: City of Chi. Police Aaron Chatman Badge# 21313

Title: Police Homicide Officer

Place of Employment: 103rd. Luellea Chi., Ill. 60617

C. Defendant: _____

Title: _____

Place of Employment: _____

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2                                                      Revised 9/2007

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: In adequate Medical Treat-
ment while in custody; Case # 14CV3274

B. Approximate date of filing lawsuit: 3/15/14

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: Douglas
Mock

D. List all defendants: Ill. City of Chi. Police Officer Alfredo
Castro Badge # 9609, and City of Chi. Police/Homicide
Officer Aaron Chatman Badge # 21313

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): U.S. District Court For The Notherm Dist. of Ill.

F. Name of judge to whom case was assigned: Judge Manish S.
Shah

G. Basic claim made: Inadequate medical treatment while
in custody. Based on Rights of the accused; 725
ILCS 5/103-2. Treatment while in custody (c)

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Defendants Motion to Dismiss is granted,
but the plaintiff was given the opportunity to replead,
and instructed to amend complaint #

I. Approximate date of disposition: 9/24/14

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

## IV.  Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

I was taken into custody on 5/28/12 by a City of Chi. police officer (Alfredo Castro #9609) supposedly for questioning without being takened first to the hospital for medical treatment. My injuries consisted of a swollen jaw, bruises to my right elbow, knee, and right hand fourth metacarpal was fractured/broken. Four to (6) six hours later a plained clothed officer came to see me, he said, that he was a homicide detective, I was told that his name was Aaron Chatman. He looked at me, I was sitting down on the edge of the bunk, I had just recently sat up to attend to my wounds. I was in a lot of pain, the left side of my right hand was out of alignment, I had to hold it with my left hand to keep it aligned it helped to relieve some of the pressure and pain, it was very severe to the point that it brought tears to my eyes. I

Revised 9/2007

had wraped some tissue on my left knee to help stop the bleeding it had soaked through and stuck to my knee this was all very visible. There is know kind of way that a City of Chi. Police Officer or Homicide Detective can claim with their training that they did not notice that I had been in a fight with some one, my jaw was swollen, my hand was broken, my knee was still bleeding from my opened wound when police officer Alfredo Castro came to my home, my elbow maybe was not seen by the Detective, Aaron Chatman, but the police officer A. Castro had to see everything, it was still light outside and he hand cuffed me with my hands behind my back everything was visible to him. The only thing that the Detective could possibly say that he probably did not see was a good view of my elbow because I was sitting down on the edge of the cell bunk, They knew that I had been in a fight, I called and reported it, my cell phone records will show that I did. I told them what happened when

I called 911. How could either one of them say when they knew that there was a fight, that they didn't even think to look and see if this was the truth. My jaw was swollen, my knee was bleeding, and the left side of my right hand was out of alignment, I had to push up on the bone to relieve the pressure and pain. They can not say that my facial expression did not show that I was in severe pain. All of this was very noticeable, even to a lay person or child with no type of training to observe things out of the ordinary, would have notice. It was total disregard by both Alfredo Castro and Aaron Chatman, they both deliberately ignored the fact that I was injuried! After the Homicide detective Aaron Chatman looked at me, he asked me if I had anything to say to him? He then said, I do not know what to charge you with. I responded, I would like to speak with my attorney. Then he left not saying another word, I thought he was going to have some one else or himself take me to the hospital but he never did and he never came back, I also thought he was upset but he would call the Ass. istant State attorney and I thought they would have told him that there was a No contact Order and confirm that this was an ongoing thing with JD Reed attacking me, and I had a right to defend myself, I thought I I was going to be released and that was why they were taking so long to take me to the hospital, that and it was the holiday (Memoria Day) and they were under-

staffed. I thought to myself that I should just be patient. Their failure to not take me to the hospital that day on May 28, 2012 denied me of the proper and necessary medical treatment I needed from a qualified Orthopedic. If they had taken me to the South Shore hospital that day to the emergency room, and then did the proper follow up for treatment as the follow up instruction which the emergency Physician Kathryn Craig MD suggested in her follow up for medical care, which stated for me to see a specialist for follow up care within 1-2 days, by Orthopedic Daniel Ivankovich MD of Pat 8012 S. Crandon Ave. Shared Physicians Offices Chi., IL. 60617 Ph. (773) 356 5415. If they had done what they was supposed to have done, instead putting it off on another officer, I would not had to deal with the incompetetence of the Cook County Dept. of Corrections Cermak Hospital medical staff. Which I am claiming they are all responsible for my deformed Knuckles (fourth Metacarpal out of alignment) and my locked/frozen shoulders and my severe chronic pain and my unnecessary medical condition that I am in, they have not determine nor have they told me what's all is exactly wrong with me, I am still being tested and I am physically unable to do most of the things I was was able to do. I am right handed but now my hand is much weaker than my left. I have also been restricted by the doctor to do even exercises other than

7

stretch and walk! I did rehab and remodeling, both residential and commercial buildings for a living and also mechanic work, the doctor told me that I cannot even do a push up. I am claiming that the two officers, Alfredo Castro and Aaron Chatman and the medical staff that I named in a separate claim are all responsible for my hand/knuckles/fourth Metacarpal being deformed and out of alignment, my severe chronic pain, frozen shoulders, and for my present poor medical condition. Which I am still trying to get corrected. I was not taken to the South Shore Hospital until May 31, 2012, My medical condition is objectively serious and their part in the failure to provide treatment and failure to take me for medical treatment by the police officers Alfredo Castro and Aaron Chatman has resulted in the furtherance of my significant injury and unnecessary wanton infliction of pain." Hayes V. Snyder, 546 F. 3d 516, 522 (7th Cir. 2008) (Citing Gutierez V. Peters, Ill. F. 3d. 1364, 1373 (7th Cir. 1997). The defendant, Douglas Mock, was not aware of his traumatic injury until November of 2013, that is when he realized his medical condition was getting worse, The chronic severe pain was getting worse and he started experiencing numbness in both hands and it was harder for him to sleep. This is when he started seeking to inquire further why was his medical condition getting worse instead of improving. — Traumatic in-

juries" have been defined as those where the da-
mage is caused by external violence and those wh-
ich are "immediate and caused by an external force,
" Pszenny v. GE Co., 132 Ill. App. 3d 964, 88 Ill.
Dec. 170, 478 N.E. 2d 485 (1 Dist. 1985). The nat-
ure and circumstances surrounding a "traumatic
injury" are such that the injured party is thereby
put on notice that actionable conduct might be in-
volved; however, the nature and circumstances of
the injury may be such that its cause is unknown
or apparently innocent at the time it occurs. In
latter type situation it would be manifestly unreal-
istic and unfair to bar a negligently injuried party's
cause of action before he has had an opportunity to
discover that it exists. Pszenny v. GE Co. 132 Ill.
App. 3d 964, 88 Ill. Dec. 170, 478 N.E. 2d 485 (1 Dist.
1985). ── Where the plaintiff was injuried by
a sudden traumatic event, and was aware of his
full injuries and the possibility that others were
at fault, such knowledge was sufficient to trig-
ger the statute of limitations, Nutty v. Universal
Eng'g Corp., 564 F. Supp. 1459 (S.D. Ill. 1983).
The purpose of the "discovery rule" is clear: it is to
prevent the plaintiff from being penalized unfairly
for failing to redress an injury, the cause of which
he could not reasonably have known. Mathis v. Hejna,
109 Ill. App. 2d 356, 248 N.E. 2d 767 (1 Dist. 1969).

V.    **Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

I am a United States citizen and my consti-
tutional rights was violated! I am in chronic severe
pain continuously, my fourth metacarpal is deformed and
out of alignment, my medical condition has gotten worse and I can
not return back to work! I want all of my medical problems cor-
rected, my fourth metacarpal aligned back up with my other fingers and
to be compensated for my injuries.

VI.   The plaintiff demands that the case be tried by a jury.   ☑ YES   ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this   13   day of  October , 20 14

orginally signed on 04/16/14

Douglas Mock
(Signature of plaintiff or plaintiffs)

Douglas Mock
(Print name)

20120601098
(I.D. Number)

Cook County Dept. of Correction
P.O Box 089002 (2650 S. California)
Chi., IL. 60608
(Address)

Note, Please Review, is attached.

10                                        Revised 9/2007

(Please Review)

The exhibits the plaintiff wants the court to consider in its threshold review of the second amended complaint is included, a letter has been sent to the Magistrate Judge Kim and the recruited counsel for plaintiff Carrie A. Durkin and Elizabeth A. Alberico representing the Law firm, Litchfield CAVO LLP Attorneys at law.

I have written both and would like for the appointed attorneys to see if my amended complaint is in compliance and consistent with Fed. R. Civ. P. 11. It is possible that they will sending an amended complaint as well, I have written to both Magistrate Judge Kim and the appointed attorneys in regards to an error on the part of someone who filed two differnt claims 14CV3274 and 14CV3275 as duplicates documents, it is not fair or constitutional to hold me responsible for someone eles's mistake, whether good or bad faith of the mistake it would be pre-judice to hold responsible. I am including this document with the rest of the material, I am waiting on a response and I would like to be able to speak with the appointed counsel-before a decision is made on which amended complaint will be used to determine between the two of us which is best! Thank you and God bless you!

Douglas Mock

Carrie A. Durkin and Elizabeth A. Alberico

Attn: Elizabeth A. Alberico
Dear Elizabeth

I have received another document #25 Filed:
09/24/14, 5 pages long, Page ID #: 102. I had
mailed you and the Magistrate Judge, Kim,
some documents stateing that there was an
error made by either the clerk or some one in the
Judge Manish S. Shah court room they made a
mistake and some how mixed up two differnt claim
which I submitted, Case # 14CV3274; which is
for Inadequate medical treatment while in custody.
Based on Rights of the accused 725 ILCS 5/103-2.
Treatment while in custody. This is for and about
medical treatment while in custody which was inad-
equate. My injuries was noticable even when
the investigators came out to take pictures two
weeks after the incident of me being attacked, my
jaw was still swollen, my knee has a permanate
scar from being hit in the knee, and there is still
a scar from being hit on my right elbow, and
my knuckles are out of alignment (looks deformed)
Both my knuckles (not wrist) and elbow were
hit, by me blocking my head from being hit by
a black rod iron prece of fence. My wounds
were apparent and I had on a pair of Blue jean
shorts and short sleeved shirt, there is no kind

of way that the arresting officer, Alfredo Castro badge #9609 or Detective Aaron Chatman badge #21313, could claim that they did not notice the injuries, both my knee and elbow was bleeding at the time I was taken into custody and was still visible when Detective Aaron Chatman came to see me maybe 4 to 6 hours later. I did not have and bandage to put on my wounds or an ace wrap. The scar left on my knee is still ugly and visible. I did not know what to think, I thought I was going to be sent home, it was Memorial Day May 28, 2012, on May 31, 2012 I asked when are they going to take me to the hospital. — Case #14 CV 3275 was for Failure to state an offense /or notify defendant with a charge within the 72 hours guide line / The Arrest process which I included that neither officer read me any Miranda Rights as well. This is not a new claim some one in the court room or clerks office made a serious mistake and I should not be held responsible. All three of my claims was sent to the Prisoner Correspondent as I was instructed, In my last letter I sent you, I requested for your help in resolving this matter, I have all of the original documents that I sent them with their stamp and label on all three claims, they are not identicle or new claims, each one has a label

with the appointed judge at that time, Judge Kocoras and Magistrate Judge Kim name on it. It also had Received May 1, 2014 Thomas G. Bruton CLERK, U.S. DISTRICT COURT stamped on all three documents. They had also stapled each page of each document together, so that they could not be mixed together but some how they were filed as identicle cases by someone there! In the document it is stated that it must be amended and that they have sent you a copy of this document as well, I need to know if I am supposed to amend this or you and your Law firm. will be doing this, my Assistant Public Defender has the pictures and the medical records will show that my knee was injuried, the skin was scraped off of my knee leaving a permanent scar, my elbow was not nearly as bad it healed pretty good and my picture here on my court movement pass shows that my jaw was swollen. I need to know what I am supposed to do. Neither police Officers Alfredo Castro who was the officer that brought me to the station for questioning or Aaron Chatman who came to question me later that night after speaking to me seemed to care nor did they show any interest in the fact that I was injuried my wounds were visible and the wounds was not covered up or concealed, it was quite obvious/clear that I had been in a fight but

it was a holiday and no one seemed to care about my wounds and injuries. I was not aware of their procedure at the police station I thought that one of them would have came back to take me to the hospital but neither one came back, I told the Dectective Aaron Chatman that I wanted to speak with my attorney. I had a Civil No Contact Order out against JD Reed the Assistant State Attorney specificly told me if JD Reed had done anything else to call them. I was never given that call! What I did not understand is that I just knew that they should have done a background check to see if their was any warrant's or whatever they could find on me or JD Reed, they always run background checks, they use people's backgroud against them. I thought they was supposed to check with the State Attorney, That's also why I thought when he came to see me - he made the statement, do you have anything you would like to say to me, I do not know what to charge you with. At that time it was late I had multiple wounds, I was in a lot of pain, and eventhough I had been barbecueing all that day I had not eaten, I was trying to finish barbueing the last of my food which was some short ribs, that is when I ran to the store but I never made it there, I was attacked by JD Reed, and now I also after cooking all day long

did not eat any of my food that I barbe cued, found myself starving as well as being injured and in pain. There is Know Kind of a way that a City of Chicago Police OFficer or Homicide Detective can claim with their training that they did not notice that I had been in a fight with some one, my jaw was swollen, my hand was broken, my Knee was still bleeding from a opened wound, my elbow maybe was not seen by the Detective but the police officer Alfredo Castro had to see all, it was still light outside and he hand cuffed me with my hands behind my back everything was visible to him! The only thing that the detective could not see, that he can claim is my elbow but my Knee which had a opened wound, my jaw was swollen and my hand I was pampering in order to push the bone up, it was hurting me and it was very noticeable even to a lay person or child with no type of training to observe things out of the ordinary would have notice. It was total disregard, their failure to not take me to the hospital that day of May 28, 2012 denied me of the proper and necessary medical treatment I needed from a qualified orthopedic. If they had taken me to South Shore hospital that day to the emergency room, on 5/28/2012 and then follow the follow up instruction which the emergency Physician Kathryn Craig MD suggested in her Follow up for medical care, for me to see a specialist

for follow up care within 1-2 days. Orthopedic Daniel Ivankovich MD of/at 8012 S. Crandon Avenue Shared Physicians Offics Chicago IL. 60617 Ph. (773) 356-5415. If they had done what they was supposed to do. I would had not had to deal with the incompetence of the Cook County Dept. of Corrections Cermak Hospital medical staff which I am claiming they are all responsible for my deformed Knuckles (fourth Metacarpal out of alignment) and my severe chronic pain and medical condition, which I still am trying to get corrected. My condition is objectively serious and thier part in the failure to provide treatment and failure to take me for treatment by the police officers A. Castro and A. Chatman has resulted in the furtherance of my significant injury and unnecessary wanton infliction of pain." Hayes V. Snyder, 546 F. 3d 516, 522 (7th Cir, 2008) (citing Gutierrez V. Peters, 111 F. 3d 1364, 1373 (7th Cir. 1997).

Will you please contact me as soon as possible to inform me what I should do? Thank you and God Bless you! I am including a copy of everything the judge has sent me!

Do not withhold good from those to whom it is due. When it is in the power of your hand to do so.

Proverbs 4:27

Sincerely Yours
Douglas Mock (Preacher)

**SOUTH SHORE HOSPITAL EMERGENCY DEPARTMENT**
8012 SOUTH CRANDON. AVE. CHICAGO, IL 60617
PHONE: (773) 356-5531

MOCK, DOUGLAS
8219 S. MARQUETTE
1ST FLOOR
CHICAGO, IL 60617

AGE 53     SEX: M     Date Issued 05/31/12

Rx    Motrin (600 MG TAB) 600 MG PO, Q8HERN     Rx# 0000004257
      Dispense 30 TAB
      No Refills

Rx    Tylenol #3 (1 EA TAB) 2 TAB PO Q 4 HOURS PRN     Rx# 0000004258
      Dispense 20 TAB
      No Refills

Kathryn Craig
-------------------------------------
CRAIG, KATHRYN MD
DEA NO:    BC6930375



**SOUTH SHORE HOSPITAL**
8012 South Crandon Ave  Chicago, IL  60617
(773) 768 - 0810

Date: 05/31/12
Account Num: V00162686398
Med Rec Num: M000418468
Patient: MOCK,DOUGLAS
Location: ER
Physician: CRAIG,KATHRYN MD

## Patient Visit Information

### Staff

Your caregivers today were:

    Physician    CRAIG,KATHRYN MD
    Nurse        SXJ

### Patient Instructions Reviewed

*Additional Information
Hand Fracture (ED)

    received 05/31/12 - 0834

### Activity Restrictions or Additional Instructions

FOLLOW UP WITH ORTHO IN 1-2 DAYS; RETURN IF WORSE.  PUSH FLUIDS.  ACE WRAP TO LEFT KNEE

### Medication Dose and Instructions

Ibuprofen (Motrin) 600 MG, ORAL EVERY 8 HOURS AS NEEDED, #30
Acetaminophen/Codeine (Tylenol #3) 2 TAB, ORAL Q 4 HOURS PRN, #20

### Medication Information for Ibuprofen (Motrin)

Ibuprofen (By mouth)

Ibuprofen (eye-bue-PROE-fen)

Treats fever and pain, including pain caused by headache, toothache, arthritis, cold or flu, migraine, or menstrual cramps. This is a nonsteroidal anti-inflammatory drug (NSAID).

Brand Name(s):Advil, Motrin Children's, Motrin IB, Advil Children's, Motrin Junior, Quality Choice Ibuprofen IB, Advil Liqui-Gels, Rite Aid Ibuprofen, Rite Aid Pain Relief Ibuprofen, Advil Migraine, Motrin, TopCare Children's Ibuprofen, Rite Aid Children's Ibuprofen, Children's Motrin, Good Neighbor Pharmacy Children's Ibuprofen

There may be other brand names for this medicine.

When This Medicine Should Not Be Used:



**SOUTH SHORE HOSPITAL**
8012 South Crandon Ave Chicago, IL 60617
(773) 768 - 0810

Date: 05/31/12
Account Num: V00162686398
Med Rec Num: M000418468
Patient: MOCK,DOUGLAS
Location: ER
Physician: CRAIG,KATHRYN MD

You should not use this medicine if you have had an allergic reaction (including asthma) to ibuprofen, aspirin, or other NSAID medicines, such as diclofenac, naproxen, Aleve(R), Celebrex(R), Ecotrin(R), or Voltaren(R). You should not use this medicine if you have a stomach ulcer or a bleeding disorder. Do not take this medicine if you have an advanced kidney disease. Do not use this medicine right before or right after having coronary artery bypass graft (CABG), a type of heart surgery.

How to Use This Medicine:

Capsule, Liquid Filled Capsule, Suspension, Tablet, Chewable Tablet * Your doctor will tell you how much of this medicine to use and how often. Do not use more medicine or use it more often than your doctor tells you to. * If you are using prescription-strength ibuprofen: This medicine should come with a Medication Guide. Read and follow these instructions carefully. Ask your doctor or pharmacist if you have any questions. Ask your pharmacist for the Medication Guide if you do not have one. * If you are using this medicine without a prescription, follow the instructions on the medicine label. * It is best to take this medicine with food or milk, so it does not upset your stomach. * Shake the oral liquid well just before using. Measure the oral liquid medicine with a marked measuring spoon, oral syringe, or medicine cup. * You must chew the chewable tablet completely before you swallow it. Drink some water afterwards to make sure you swallow all of the medicine. * For a Child: If you are not sure how much medicine to give, ask your pharmacist or health caregiver. It is best to figure a child's dose based on how much the child weighs, not the child's age. For most kinds of ibuprofen, do not give this medicine more than 4 times in 1 day (24 hours) unless the doctor tells you to. * For an Adult: Follow your doctor's instructions for how much medicine to take. If you are taking this medicine without a prescription, follow the directions on the package, but do not take more than 6 pills in 1 day (24 hours) unless your doctor tells you to. * Use this medicine for the shortest time possible and in the smallest dose possible. This will help lower the risk of side effects.

If a dose is missed: * If you miss a dose or forget to use your medicine, use it as soon as you can. If it is almost time for your next dose, wait until then to use the medicine and skip the missed dose. Do not use extra medicine to make up for a missed dose.

How to Store and Dispose of This Medicine: * Store the medicine in a closed container at room temperature, away from heat, moisture, and direct light. Do not freeze the oral liquid. * Ask your pharmacist, doctor, or health caregiver about the best way to dispose of any outdated medicine or medicine no longer needed. * Keep all medicine away from children and never share your medicine with anyone.

Drugs and Foods to Avoid:

Ask your doctor or pharmacist before using any other medicine, including over-the-counter medicines, vitamins, and herbal products. * Make sure your doctor knows if you are also using aspirin, lithium (Eskalith(R)), methotrexate (Rheumatrex(R)), a blood thinner (such as warfarin, Coumadin(R)), a steroid medicine (such as cortisone, dexamethasone, hydrocortisone, methylprednisolone, prednisolone, prednisone, or Orapred(R)), a diuretic or "water pill" (such as furosemide, hydrochlorothiazide (HCTZ), torsemide, Demadex(R), or Lasix(R)), or a blood pressure medicine (such as enalapril, lisinopril, Accupril(R), Atacand(R), Hyzaar(R), Lotrel(R), or Zestril(R)). * Do not use any other NSAID medicine unless your doctor says it is okay. Some other NSAIDs are aspirin, diclofenac, naproxen, Aleve(R), Celebrex(R), Ecotrin(R), or Voltaren(R). * Do not drink alcohol while you are using this medicine.


**SOUTH SHORE HOSPITAL**
8012 South Crandon Ave Chicago, IL 60617
(773) 768-0810

Date: 05/31/12
Account Num: V00162686398
Med Rec Num: M000418468
Patient: MOCK,DOUGLAS
Location: ER
Physician: CRAIG,KATHRYN MD

Warnings While Using This Medicine: * Make sure your doctor knows if you are pregnant or breastfeeding. You should not use this medicine during the later part of pregnancy. * Make sure your doctor knows if you have a history of ulcers or other stomach problems. Tell your doctor if you have kidney disease, liver disease, anemia, asthma, bleeding problems, eye or vision problems, high blood pressure, congestive heart failure (CHF), or heart or circulation problems. Tell your doctor if you have a lupus or a similar connective tissue disease. * This medicine might cause bleeding in your stomach or intestines. This is more likely if you have had a stomach ulcer in the past, if you smoke or drink alcohol regularly, if you are over 60 years old, if you are in poor health, or if you are using certain other medicines (a steroid medicine or a blood thinner). Tell your doctor if you have ongoing or repeat stomach problems such as heartburn, indigestion, upset stomach, or pain. * This medicine may raise your risk of having a heart attack or stroke. This is more likely in people who already have heart disease. People who use this medicine for a long time might also have a higher risk. * This medicine should not be given to a child younger than 6 months old unless your doctor tells you otherwise. If your child has a severe or ongoing sore throat, high fever, headache, nausea, and vomiting, call your child's doctor right away. * If your symptoms do not improve or if they get worse, call your doctor. Call your doctor if the pain gets worse or lasts longer than 10 days, or if the fever lasts longer than 3 days. * Tell your doctor if you have been vomiting or had diarrhea. You might be dehydrated. * This medicine might contain phenylalanine (aspartame). This is only a concern if you have a disorder called phenylketonuria (PKU), which is a problem with amino acids. Talk to your doctor before using this medicine if you have PKU. * This medicine might contain sugar. If you have diabetes, you might need to count this in your diet. * When treating a migraine headache: Talk to your doctor if you have a headache that feels different from your usual headache, if the pain is much worse than usual, if you have a fever and stiff neck, if you have a headache every day, if this is your first migraine headache, or if the pain is so bad you cannot get up. Call your doctor if your headache was caused by a recent head injury, physical effort, coughing, or bending down. * Make sure any doctor or dentist who treats you knows that you are using this medicine. * This medicine may cause a serious type of allergic reaction called anaphylaxis. Anaphylaxis can be life-threatening and requires immediate medical attention. Call your doctor right away if you have a rash; itching; hoarseness; trouble breathing; trouble swallowing; or any swelling of your hands, face, or mouth while you are using this medicine. * Serious skin reactions can occur with this medicine. Check with your doctor right away if you have blistering, peeling, or loosening of the skin; red skin lesions; severe acne or skin rash; sores or ulcers on the skin; or fever or chills while you are using this medicine. * Liver problems may occur while you are using this medicine. Stop using this medicine and check with your doctor right away if you are having more than one of these symptoms: abdominal pain or tenderness; clay-colored stools; dark urine; decreased appetite; fever; headache; itching; loss of appetite; nausea and vomiting; skin rash; swelling of the feet or lower legs; unusual tiredness or weakness; or yellow eyes or skin. * Check with your doctor immediately if blurred vision, difficulty in reading, or any other change in vision occurs during or after treatment. Your doctor may want you to have your eyes checked by an ophthalmologist (eye doctor). * Your doctor will need to check your blood at regular visits while you are using this medicine. Be sure to keep all appointments.

Possible Side Effects While Using This Medicine:

Call your doctor right away if you notice any of these side effects: * Allergic reaction: Itching or hives, swelling in your face or hands, swelling or tingling in your mouth or throat, chest tightness, trouble breathing * Blistering, peeling, or red skin rash. * Bloody or black, tarry stools. * Change in how much or how often you urinate. * Chest pain, shortness of breath, or coughing up blood. * Dark-colored urine or pale stools. * Fever, neck pain, or stiff neck. *

 **SOUTH SHORE HOSPITAL**
8012 South Crandon Ave  Chicago, IL  60617
(773) 768 - 0810

Date: 05/31/12
Account Num: V00162686398
Med Rec Num: M000418468
Patient: MOCK,DOUGLAS
Location: ER
Physician: CRAIG,KATHRYN MD

---

Numbness or weakness in your arm or leg, or on one side of your body. * Pain in your lower leg (calf). * Problems with vision, speech, or walking. * Rapid weight gain. * Redness or swelling of the body area where you have pain. * Severe stomach pain. * Shortness of breath, cold sweat, and bluish-colored skin. * Skin rash or blisters with fever. * Sudden or severe headache. * Swelling in your hands, ankles, or feet. * Trouble seeing, change in how you see colors. * Unusual bleeding, bruising, or weakness. * Vomiting blood or something that looks like coffee grounds. * Yellowing of your skin or the whites of your eyes.

 If you notice these less serious side effects, talk with your doctor: * Constipation, diarrhea, or upset stomach. * Dizziness or headache. * Mild nausea, vomiting, gas, stomach pain, or heartburn. * Mild rash or itching skin. * Ringing in your ears.

If you notice other side effects that you think are caused by this medicine, tell your doctor.

Call your doctor for medical advice about side effects.  You may report side effects to FDA at 1-800-FDA-1088

## Medication Information for Acetaminophen/Codeine (Tylenol #3)

Acetaminophen/Codeine (By mouth)

Acetaminophen (a-seet-a-MIN-oh-fen), Codeine Phosphate (KOE-deen FOS-fate)

Treats mild to moderately severe pain. This medicine contains a narcotic pain reliever.

Brand Name(s):Tylenol w/Codeine #3, Capital w/Codeine, Tylenol w/Codeine #4, Tylenol With Codeine No. 4, Tylenol w/Codeine No 4, Tylenol with Codeine No. 3, Theracodeine-300, Tylenol w/Codeine, Cocet, Cocet Plus

There may be other brand names for this medicine.

When This Medicine Should Not Be Used:

You should not use this medicine if you have had an allergic reaction to acetaminophen or codeine, or to other narcotic medicines (such as Percocet(R), Percodan(R), Darvon(R), Vicodin(R)).

How to Use This Medicine:

Tablet, Capsule, Liquid * Your doctor will tell you how much of this medicine to use and how often. Do not use more medicine or use it more often than your doctor tells you to. It is not safe to use more than 4 grams (4,000 milligrams) of acetaminophen in one day (24 hours). * If this medicine upsets your stomach, you may take it with food or milk. * Measure the oral liquid medicine with a marked measuring spoon, oral syringe, or medicine cup. * Drink plenty of fluids to help avoid constipation.

If a dose is missed: * If you are using this medicine on a regular schedule and you miss a dose or forget to take your medicine, take it as soon as you can. If it is almost time for your next dose, wait until then to take the medicine and skip the missed dose. * Do not use extra medicine



**SOUTH SHORE HOSPITAL**
8012 South Crandon Ave  Chicago, IL  60617
(773) 768 - 0810

Date: 05/31/12
Account Num: V00162686398
Med Rec Num: M000418468
Patient: MOCK,DOUGLAS
Location: ER
Physician: CRAIG,KATHRYN MD

to make up for a missed dose.

How to Store and Dispose of This Medicine: *  Store the medicine at room temperature in a closed container, away from heat, moisture, and direct light. Do not freeze the oral liquid or keep it in the refrigerator. *  Ask your pharmacist, doctor, or health caregiver about the best way to dispose of any leftover medicine after you have finished your treatment. You will also need to throw away old medicine after the expiration date has passed. *  Keep all medicine away from children and never share your medicine with anyone.



Drugs and Foods to Avoid:

Ask your doctor or pharmacist before using any other medicine, including over-the-counter medicines, vitamins, and herbal products. *  Make sure your doctor knows if you are using atropine, dicyclomine (Bentyl(R)), glycopyrrolate (Robinul(R)), scopolamine (Transderm Scop(R)), medicines to treat mental illness (such as Haldol(R), Mellaril(R), Serentil(R)), or any medicines that make you sleepy (such as sleeping pills, cold and allergy medicine, other narcotic pain relievers, or sedatives). *  Do not drink alcohol while you are using this medicine. Acetaminophen can damage your liver and drinking alcohol can increase this risk. If you regularly drink 3 or more alcoholic drinks every day, do not take acetaminophen without asking your doctor. *  Many combination medicines contain acetaminophen, including products with brand names such as Alka-Seltzer Plus(R), Comtrex(R), Drixoral(R), Excedrin Migraine(R), Midol(R), Sinutab(R), Sudafed(R), Theraflu(R), and Vanquish(R). Carefully check the labels of all other medicines you are using to be sure they do not contain acetaminophen.

Warnings While Using This Medicine: *  Make sure your doctor knows if you are pregnant or breastfeeding, or if you have asthma, liver disease, kidney disease, problems with urination, underactive thyroid, Addison's disease, prostate problems, a stomach disorder, or a history of head injury or brain tumor. *  This medicine may be habit-forming. If you feel that the medicine is not working as well, do not take more than your prescribed dose. Call your doctor for instructions. *  Make sure any doctor or dentist who treats you knows that you are using this medicine. Acetaminophen may affect the results of certain medical tests. *  This medicine may make you dizzy or drowsy. Avoid driving, using machines, or doing anything else that could be dangerous if you are not alert. *  This medicine may cause constipation. This is more common if you use it for a long time. Ask your doctor if you should also use a laxative to prevent and treat constipation. *  When a mother is breastfeeding and takes codeine, there is a very small chance that this medicine could cause serious side effects in the baby. This is because codeine works differently in a few women, so their breastmilk contains too much medicine. If you take codeine, be alert for these signs of overdose in your nursing baby: sleeping more than usual, trouble breastfeeding, trouble breathing, or being limp and weak. Call the baby's doctor right away if you think there is a problem. If you cannot talk to the doctor, take the baby to the emergency room or call 911.

Possible Side Effects While Using This Medicine:

Call your doctor right away if you notice any of these side effects: *  Allergic reaction: Itching or hives, swelling in face or hands, swelling in the mouth or throat, tightness in chest, trouble breathing *  Dark-colored urine or pale stools *  Extreme weakness, shallow breathing, slow heartbeat, sweating, cold or clammy skin *  Nausea, vomiting, loss of appetite, pain in the upper stomach *  Unusual bleeding or bruising *  Yellow skin or eyes



**SOUTH SHORE HOSPITAL**
8012 South Crandon Ave  Chicago, IL  60617
(773) 768 - 0810

Date: 05/31/12
Account Num: V00162686398
Med Rec Num: M000418468
Patient: MOCK,DOUGLAS
Location: ER
Physician: CRAIG,KATHRYN MD

If you notice these less serious side effects, talk with your doctor: * Constipation * Feelings of extreme happiness or sadness * Mild skin rash or itching

If you notice other side effects that you think are caused by this medicine, tell your doctor.

Call your doctor for medical advice about side effects.  You may report side effects to FDA at 1-800-FDA-1088

**Follow-up**

MOCK,DOUGLAS has been referred to the following clinics/specialists for follow up care:

IVANKOVICH,DANIEL MD
   8012 S. CRANDON AVENUE
   SHARED PHYSICIANS OFFICS
   CHICAGO, IL 60617
   Ph: (773)356-5415
   Fax: (773)768-6141



**PROVISIONAL DIAGNOSIS**

PATIENT:   MOCK,DOUGLAS

DIAGNOSIS:  KNEE INJURY/FOURTH METACARPAL FX



**SOUTH SHORE HOSPITAL**
8012 South Crandon Ave Chicago, IL 60617
(773) 768 - 0810

Date: 05/31/12
Account Num: V00162686398
Med Rec Num: M000418468
Patient: MOCK,DOUGLAS
Location: ER
Physician: CRAIG,KATHRYN MD

### Hand Fracture

## WHAT YOU SHOULD KNOW:

- A hand fracture is a break in one or more of the bones in your hand. The bones in your hand include the phalanges and metacarpals. The phalanges are the bones in your fingers. The metacarpals form your knuckles and connect your hand to your wrist. A broken hand is often caused by trauma, such as a fall, injury, or an accident. Fractures also can happen when the muscles attached to your hand are stressed. Muscle stress leading to a hand fracture is more common in softball and tennis players.



Hand and Wrist Bones

- You may have pain, swelling, or bruising in your injured hand. Your hand may look deformed (shaped different than normal). You may not be able to move your hand like you normally do. You may need an x-ray, bone scan, or computed tomography (CT) scan to diagnose your hand fracture. You may need a brace, cast, or splint to decrease your hand movement while it heals. Surgery also may be needed to put your broken bones back in their normal position. Having your hand fracture treated may decrease your symptoms such as pain and weakness. Treatment may allow you to return to the activities you enjoy, such as sports.



**SOUTH SHORE HOSPITAL**
8012 South Crandon Ave. Chicago, IL 60617
(773) 768 - 0810

Date: 05/31/12
Account Num: V00162686398
Med Rec Num: M000418468
Patient: MOCK,DOUGLAS
Location: ER
Physician: CRAIG,KATHRYN MD

## INSTRUCTIONS:

**Take your medicine as directed:** Call your primary healthcare provider if you
think your medicine is not helping or if you have side effects. Tell him if you are
allergic to any medicine. Keep a list of the medicines, vitamins, and herbs you
take. Include the amounts, and when and why you take them. Bring the list or
the pill bottles to follow-up visits.

- **Antibiotics:** Antibiotics may be given to help treat or prevent an infection
  caused by germs called bacteria.

- **Pain medicine:**

You may need medicine to take away or decrease pain.
  - Learn how to take your medicine. Ask what medicine and how much you
    should take. Be sure you know how, when, and how often to take it.

  - Do not wait until the pain is severe before you take your medicine. Tell
    caregivers if your pain does not decrease.

  - Pain medicine can make you dizzy or sleepy. Prevent falls by calling
    someone when you get out of bed or if you need help.

**Follow-up visit:**
- Ask your caregiver when to return for a follow-up visit. You may need a
  follow-up visit to remove your cast, splint, or stitches from surgery. Keep all
  appointments. Write down any questions you may have. This way you will
  remember to ask these questions during your next visit.

**Bathing with a cast or splint:** If you have a cast or splint, it is important not to
get it wet. Before bathing, cover the cast or splint with a plastic bag. Tape the
bag to your skin above the cast or splint to seal out the water. Keep your hand
out of the water in case the bag leaks. Follow your caregiver's instructions about
when it is okay to take a bath or shower.

**Driving:** You may not be able to drive yourself for up to two weeks after
treatment for your hand fracture. You may need to wait for your pain to decrease
so you can better control a motor vehicle. Ask your caregiver for instructions



**SOUTH SHORE HOSPITAL**
8012 South Crandon Ave  Chicago, IL  60817
(773) 768 - 0810

Date: 05/31/12
Account Num: V00162686398
Med Rec Num: M000418468
Patient: MOCK,DOUGLAS
Location: ER
Physician: CRAIG,KATHRYN MD

about when it is safe for you to drive.

**Elevate your hand:**  Use pillows to keep your hand above the level of your heart. This helps decrease swelling and pain and improves blood flow. Keeping your hand elevated can also help the injury heal faster.

**Exercise your hand:** It is important that you keep moving your hand and fingers. Movement helps prevent stiffness and tightness in your hand muscles and joints. Try to open and close your hand and fingers fully, and try to make a fist. Your caregiver may want you to go to a hand therapist. A hand therapist will help you with special exercises. These exercises help make the bones and muscles in your hand stronger. **Do not start exercising your hand without talking to your caregiver first.**

**Ice:** Ice causes blood vessels to constrict (get small) which helps decrease swelling, pain, and redness. Put crushed ice in a plastic bag and cover it with a towel. Put this on your hand for 15 to 20 minutes every hour. Use the ice for as long as your caregiver says you should. Do  **not**  sleep with the ice pack on because you can get frostbite.

**Pin care:** If you have pins that enter your broken bone through your skin, you will need to clean them daily. Cleaning the pins can help prevent an infection. Ask your caregiver for more information about pin care.

**Returning to sport activities:** Your hand fracture may heal in about 4 to 6 weeks, but it can take months to regain hand strength. You may need to avoid sports that can re-injure your hand. Ask your caregiver when it will be safe for you to play sports again.

**CONTACT A CAREGIVER IF:**

- You have a fever (increased body temperature).

- You have new sores around the area of your brace, cast, or splint.

- You have new, or worsening trouble moving your hand.

- You notice a bad smell coming from under your cast.

- You have chest pain or trouble breathing that is getting worse over time.

- You have questions or concerns about your injury, treatment, or care.



Date: 05/31/12
Account Num: V00162686398
Med Rec Num: M000418468
Patient: MOCK,DOUGLAS
Location: ER
Physician: CRAIG,KATHRYN MD



## SEEK CARE IMMEDIATELY IF:

- The pain in your injured hand gets worse, even after rest and taking medicine.

- You have drainage from your surgery wounds or open skin areas.

- Your surgery wound or open skin areas become red, warm, and swollen.

- Your injured hand or fingers feel numb.

- The skin or fingers on your injured hand become swollen, cold, or turn white or blue.

- Your cast cracks or gets damaged.

- You have new and sudden chest pain. You may have more pain when you take deep breaths or cough. You may cough up blood.

- You suddenly feel lightheaded and have trouble breathing.

- Your arm feels warm, tender, and painful. It may look swollen and red.

Copyright © 2011. Thomson Reuters. All rights reserved. Information is for End User's use only and may not be sold, redistributed or otherwise used for commercial purposes.

The above information is an educational aid only. It is not intended as medical advice for individual conditions or treatments. Talk to your doctor, nurse or pharmacist before following any medical regimen to see if it is safe and effective for you.

## CHICAGO POLICE DEPARTMENT
## FOIA ARREST REQUEST RESPONSE
3510 S. Michigan Avenue, Chicago, Illinois 60653



| | |
|---|---|
| **NAME** | DOUGLAS MOCK |
| **AGE** | 53 |
| **ADDRESS** | 082XX S MARQUETTE AVE<br>CHICAGO, IL 60617 |
| **CHARGE(S)** | 1 COUNT(S) OF 720 ILCS 5.0/12-3.05-A-1 AGG<br>BATTERY/GREAT BODILY HARM |
| **ARREST DATE** | 28-MAY-2012 |
| **ARREST TIME** | 07:17 PM |
| **ARREST LOCATION** | 8247 S MARQUETTE AVE<br>CHICAGO, IL 60617 |
| **ARRESTING AGENCY** | CHICAGO POLICE DEPARTMENT |
| **BOND TYPE** | |
| **BOND AMOUNT** | |
| **BOND DATE** | |
| **RELEASED FROM AGENCY<br>DETENTION FACILITY** | 01-JUN-2012 07:44 AM |



**Rahm Emanuel**
Mayor

**Department of Police · City of Chicago**
3510 S. Michigan Avenue · Chicago, Illinois 60653

**Garry F. McCarthy**
Superintendent of Police

August 31, 2012

Douglas Mock 2012-0601098
P.O. Box 089002
Chicago, IL. 60608

Notice of Public Records
Request Date: August 31, 2012
**FOIA FILE NO.: 12-2945**

Dear Mr. Mock:

The Chicago Police Department is in receipt of your Freedom of Information Act (FOIA) request. In your request you state that you're seeking: an arrest report from a May 28th, 2012 arrest.

Upon review, it was determined that your request is granted in part and denied in part. Section 2.15 of the Act requires that the following information from arrest reports be disclosed to requesting parties. Please be advised that copies of the arrest reports themselves were tendered to the court at the time of his arrest and remain available to his attorney via the subpoena process.

If I can be of further assistance, you may contact me at (312)745-5308, or by mail at the below address:

Chicago Police Department
Attention: Freedom of Information Officer
Records Inquiry Section, Unit 163
3510 S. Michigan Ave., Rm. 1027SE
Chicago, IL 60653

Sincerely,
P.O. Erika Rodriguez#11057
Assistant Freedom of Information Officer
Department of Police



# OFFICE OF THE STATE'S ATTORNEY
## ANITA M. ALVAREZ
### COOK COUNTY, ILLINOIS

FIRST MUNICIPAL DISTRICT
555 W. HARRISON STREET, SUITE 2700
CHICAGO, ILLINOIS 60607

DATE: 3-29-11

TO: Douglas Mock
8219 S. Marquette Ave
Chi. IL 60017

RE: People v. J.D. Reed
Case No.: 11-190735
Charge: CD TP

Our records indicate that you are a witness in a case pending in Branch 46, located at 555 W. Harrison St., Chicago IL 60607, room 304. This case has been continued to 5-2-11 at 9 (a.m)/p.m.

Please arrive at least ten minutes early and bring any paperwork given to you by the police relating to your case, or any paperwork, receipts, photos, or medical records that you may have acquired relating to your case. When the case for which you are a witness is called, the Assistant State's Attorney will call out your name. Please stand and answer "here" in a loud and clear voice. If the Assistant State's Attorney cannot hear you and does not know that you are present in court, your case may be dismissed. If you do not hear your name called but hear the defendant's name called, please stand and say "witness in court."

*Please note that if you are not present in court at the time the case is called, the case will be dismissed.* You must contact us if your physical condition, such as hospitalization or severe illness, prevents you from attending the above court date. You may reach an Assistant State's Attorney for Branch 46 by calling (312) 325-9200.

Sincerely,

Assistant State's Attorney



# OFFICE OF THE STATE'S ATTORNEY
## - ANITA M. ALVAREZ
### COOK COUNTY, ILLINOIS

FIRST MUNICIPAL DISTRICT
555 W. HARRISON STREET, SUITE 2700
CHICAGO, ILLINOIS 60607

DATE: 5/2/11

TO: Douglas Mock
H/D

RE: People v. J D Reed

Case No.: 11-190735

Charge: CDTP

Our records indicate that you are a witness in a case pending in Branch 46, located at 555 W. Harrison St., Chicago IL 60607, room 304. This case has been continued to 6/15/11 at 1:30 a.m./p.m.

Please arrive at least ten minutes early and bring any paperwork given to you by the police relating to your case, or any paperwork, receipts, photos, or medical records that you may have acquired relating to your case. When the case for which you are a witness is called, the Assistant State's Attorney will call out your name. Please stand and answer "here" in a loud and clear voice. If the Assistant State's Attorney cannot hear you and does not know that you are present in court, your case may be dismissed. If you do not hear your name called but hear the defendant's name called, please stand and say "witness in court."

*Please note that if you are not present in court at the time the case is called, the case will be dismissed.* You must contact us if your physical condition, such as hospitalization or severe illness, prevents you from attending the above court date. You may reach an Assistant State's Attorney for Branch 46 by calling (312) 325-9200.

Please bring in any evidence of
damage bills/photos
2 wks before
trial date you will also be receiving

Sincerely,

Assistant State's Attorney

(1/05/04) CCCRN09(

## DOMESTIC VIOLENCE RELATED CONDITIONS

☐ Comply with all lawful court orders including an Order of Protection

☐ Complete Domestic Violence Program:
  ☐ Defendants sentenced to Probation, as directed by Adult Probation
  ☐ Defendants sentenced to Conditional Discharge or Supervision will complete domestic violence counseling and any other recommendations per the assessment of the Social Service Department, which may include an evaluation and/or treatment for alcohol and drug abuse, mental health, parenting, and sexual abuse.

☐ Modifications, which would impose a financial hardship shall be reviewed by the sentencing court before so ordered.

## SEX OFFENDERS CONDITIONS

☐ Complete evaluation and treatment recommendation for sex offenders

☐ Register as a sex offender

☐ STD/HIV Testing

☐ Adult Probation Department Sex Offender Program

☐ DNA Testing

## RESTITUTION

☐ Make restitution to _____ in the amount of $_____ payable through the Social Service Department or Adult Probation Department at the ra of $_____ per _____ with final payment due on before _____.

☐ Other   B No Contact with Luemis Muck or 8219 S Marquette Ave Chicago IL

I acknowledge receipt of this Order and agree to abide by the specified conditions. I agree to accept notice by regular mail at th address provided to the monitoring agency and to answer questions asked by the Court related to my behavior. I understand tha a failure to comply with the conditions of this order, or refusal to participate, or withdrawal or discharge from a required program plan, or testing will be considered a violation of this Order and will be reported to the Court, and may result in a re-sentencing imposing the maximum penalty as provided for the offense.

_____ (Defendant's Address)    _____ (City)    _____ (State/Zip)

_____ (Defendant's Date of Birth)    _____ (Defendant's Telephone Number)    _____ (Defendant's Signature)

Dated: July 8 2011    Prepared by ASA _____

ENTERED
JUDGE
Domestic Violence 555 W. Harrison
JUL 08 2011
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

ENTERED

Dated: 7-8 _____ 2K11

_____ Judge    _____ Judge's No.

*Note: Bold print specifications require additional written orders*

Sentencing Order/Supervision - Conditional Discharge - Probation
(This form replaces CCG N090, CCR N090A, CCR N090B)

(3/06/07) CCCR N

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

PEOPLE OF THE STATE OF ILLINOIS

or

A Municipal Corporation

v.

Reed J.D.

☐ Criminal Division ☐ Municipal District No. 46 Br/Rm

Case No. 11-190735

Statute Citation: Crim. Damage to Pro

IRN: 092173 SID No.

**SENTENCING ORDER**
**SUPERVISION - CONDITIONAL DISCHARGE - PROBATION** CLASS A

IT IS HEREBY ORDERED that the defendant is sentenced to a term of:
☐ Supervision ☑ Conditional Discharge ☐ Probation (720 ILCS 550/10, 720 ILCS 570/410, or 720 ILCS 646/70) ☑ Year(s) ☐ Month(s) ☐ D
☐ REPORTING (All DUI orders are reporting) ☑ NON-REPORTING ☐ LIMITED REPORTING (Monitor community service or restitution o ☐ Prob
☑ Scheduled Termination Date    July 6    2012

IT IS FURTHER ORDERED that the defendant shall comply with the conditions as specified below:

## STANDARD CONDITIONS
☑ If reporting is ordered, the defendant shall report immediately to:

☐ Social Service Department for conditional discharge/supervision/community service and pay that department such sum as determined by that department in accordance with the standard probation fee guide. Said fee not to exceed $50.00 per month
or

☐ Adult Probation Department for probation/community service, comply with Adult Probation's rules and regulations and pay that department such sum as determined by that department in accordance with the standard probation fee guide. Said fee not to exceed $50.00 per month.

☑ Pay all fines, costs, fees, assessments, reimbursements and restitution (if applicable)
☑ Not violate the criminal statute of any jurisdiction
☑ Refrain from possessing a firearm or other dangerous weapons
☑ Notify monitoring agency of change of address
☑ Not leave the State of Illinois without the consent of the court or monitoring agency
☑ Comply with reporting and treatment requirements as determined by the Adult Probation Department assessment. Any treatment requirements not specified elsewhere on this order that would cause a financial hardship shall be reviewed by the court before being imposed.

## DRUG/ALCOHOL RELATED CONDITIONS
☐ Complete drug/alcohol evaluation and treatment recommendation
☐ Submit to random drug testing
☐ Adult Probation Department Intensive Drug Program
☐ Complete TASC Treatment Program

## DUI RELATED CONDITIONS
☐ DUI Offenders Classified Level A, report immediately to Central States Institute of Addictions and commence the following intervention program within 60 days of this ord
☐ Minimum    ☐ Moderate    ☐ Significant
☐ DUI Offenders Classified Level B or C, report immediatel to:  ☐ The Social Service Department.
☐ The Adult Probation Department
and complete a Comprehensive Correctional Intervention Assessment within 30 days, fully comply with the Comprehensive Intervention Plan and commence the following intervention program within 60 days of this order.
☐ Minimum    ☐ Moderate    ☐ Significant    ☐ High
☐ Attend a Victim Impact Panel
☐ File proof of financial responsibility with the Secretary of St
☐ Surrender driver's license to the Clerk of the Court
☐ Pay all driver's license reinstatement fees

## SPECIAL CONDITIONS
☐ Obtain GED
☐ Home Confinement _____ days
☐ Adult Probation Department Intensive Probation

☐ Perform _____ hours of a community service as directed by the
☐ Social Service Department Community Service Program
☐ Sheriff's Work Alternative Program (773) 869-3686
☐ Adult Probation Department
☑ Avoid contact with
See page 2
☐ Complete mental health evaluation and treatment recommendations
☐ Adult Probation Department Mental Health Unit
☐ Adult Probation Department Gang Unit

Certificate of Service

I, Douglas Mock, swear under penalty of perjury that I served a copy of the attached document on (please forward to the address for the defendants counsel) (Defendant Aaron Chatman) by placing it in the mail at the County of Cook Dept. of Correctional Center on 10/16/2014

Douglas Mock

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOUGLAS MOCK (#2012 0601098),

        Plaintiff,

              v.

A. CATRO, et al.,

        Defendants.

No. 14 CV 3274

Judge Manish S. Shah

## ORDER

The defendants' motion to dismiss [#22] is granted in part and denied in part. The original complaint [#5] is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and the plaintiff's amended complaint [#21] is stricken. The plaintiff shall submit a proposed second amended complaint in accordance with this order by 10/24/2014. Failure to submit a second amended complaint will result in summary dismissal of this action. The clerk is directed to provide the plaintiff with an amended civil rights complaint form and instructions along with a copy of this order. A copy of this order will also be sent to plaintiff's recruited counsel in 14 CV 3273.

## STATEMENT

The plaintiff, an inmate in the custody of the Cook County Department of Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, two Chicago police officers, violated the plaintiff's constitutional rights by denying him access to needed medical care. More specifically, the plaintiff alleges that the officers took him into custody for questioning about an unspecified matter without first taking him to a hospital for treatment of multiple injuries, including a fractured wrist. This matter is before the court for ruling on the defendants' motion to dismiss the complaint for failure to state a claim. For the reasons stated in this order, the motion to dismiss is granted, but the plaintiff will be given the opportunity to replead.

*Legal Standard*

*Pro se* submissions are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

A plaintiff need only state his basic legal claim and provide "some indication . . . of time and place." *Thompson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004). In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court assumes all factual allegations in the complaint to be true, viewing all facts—as well as any inferences reasonably drawn therefrom—in the light most favorable to the plaintiff. *Bell Atlantic Corp.*, 550 U.S. at 563 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)); *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 556.

*Facts*

On May 28, 2012, an unnamed City of Chicago police officer took the plaintiff into custody for questioning. At the time, the plaintiff was suffering from multiple injuries, including a swollen jaw, bruises to his elbow and knee, and a fractured wrist. The police officer failed to take the plaintiff to a hospital for needed treatment of his injuries; instead he took the plaintiff directly to a police station to interrogate him. The plaintiff did not receive any medical care until May 31, 2012, three days later, prior to being booked into the Cook County Jail. The Cook County Department of Corrections website reflects that the plaintiff is currently facing prosecution for aggravated battery, with a custody date of June 1, 2012.

*Analysis*

The court agrees that the facts alleged are insufficient to state a cognizable claim against the defendants; however, the plaintiff will be given the opportunity to submit a second amended complaint curing pleading deficiencies, assuming he can do so consistent with Fed. R. Civ. P. 11.

It should be noted that the defendants' motion seems to have crossed in the mail with an amended complaint from the plaintiff asserting new claims against the defendants and other individuals. The plaintiff did not have leave of court to amend, *see* Minute Entry of September 3, 2014, the amended complaint is not responsive to the defendants' motion to dismiss (so it does not cure the deficiencies discussed in that motion), and the plaintiff once again names the Chicago Police Department after being advised earlier this year that the police department is not a suable entity. *See* Order of May 12, 2014. The court therefore strikes the amended complaint.

If the plaintiff chooses to submit a second amended complaint, he must state facts showing that the defendants were aware of and disregarded a serious medical condition. The Fourth Amendment prohibits police officers from unreasonably withholding access to care for an arrestee's serious medical needs. *See, e.g., Ortiz v. Chicago,* 656 F.3d 523, 530 (7th Cir. 2011). Whether officers acted reasonably "is determined by four factors: the officers' notice of the arrestee's medical needs; the seriousness of the medical needs; the scope of the requested treatment; and police interests." *Legg v. Pappas,* 383 Fed. App'x 547, 551 (7th Cir. 2010) (citing *Williams v. Rodriguez,* 509 F.3d 392, 403 (7th Cir. 2007)). A "serious" medical condition is one that has been diagnosed by a physician as mandating treatment, or one that is so  obvious that even a lay person would perceive the need for a doctor's attention.) *See Edwards v. Snyder,* 478 F.3d 827, 830-831 (7th Cir. 2007); *Foelker v. Outagamie County,* 394 F.3d 510, 512-13 (7th Cir. 2005). A condition is also objectively serious if  "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder,* 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997)).

In the case at bar, the plaintiff names as defendants Chicago police officers Alfredo Castro and Aaron Chatman, but neither individual is mentioned anywhere in  the body of the complaint. Liability under the Civil Rights Act requires a defendant's personal involvement in the alleged constitutional violation. *See Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir. 2003). I cannot tell from the complaint what it is Castro and Chatman personally did. (I note that there is no allegation that the plaintiff asked for medical treatment) and plaintiff does not allege that his injuries  were so apparent that the defendants must have known that he needed medical attention. The defendants point out that there are no visible injuries in the plaintiff's May 31, 2012, booking photo attached to both the complaint and the motion to dismiss.[1] The plaintiff's mug shot is not the conclusive proof defendants' would need

---

[1] Exhibits attached to the complaint are a part thereof. Fed. R. Civ. P. 10(c). Moreover, in resolving a motion to dismiss, the court is entitled to take judicial notice of matters of public record without converting the motion to a motion for summary judgment. *See, e.g., Palay v. United States,* 349 F.3d 418, 425 (7th Cir. 2003) (citations omitted).

to prevail at this stage of the case, and taking the allegations in the light most favorable to the plaintiff, a swollen jaw (even if not captured by the camera), fractured wrist, and bruised joints, could very well have been apparent to the officers. Nevertheless, the plaintiff must submit a second amended complaint stating what each named defendant did or failed to do, what "serious" medical need he was experiencing, whether he asked for medical attention, and whether his injuries were obvious. 

The statute of limitations for Section 1983 actions in Illinois is two years. *See, e.g., Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); 735 ILCS 5/13-202. In this circuit, a plaintiff cannot invoke the relation back principles of Rule 15(c) to name new defendants after the statute of limitations has expired. *See Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993). Likewise, any new claims against the defendants, such as that they failed to read him his *Miranda* rights, are likely time-barred. Accordingly, the second amended complaint should not attempt to assert any new claims against either the original defendants or any newly identified individuals.

For the foregoing reasons, the court dismisses the complaint and strikes the amended complaint without prejudice. The plaintiff is granted thirty days in which to submit a second amended complaint on the court's required form. The plaintiff must write both the case number and the judge's name on the second amended complaint, sign it, and return it to the Prisoner Correspondent. The plaintiff is cautioned that an amended pleading supersedes the original complaint and must stand complete on its own. (Any exhibits the plaintiff wants the court to consider in its threshold review of the second amended complaint must be attached.) The court admonishes the plaintiff that in signing any court submission, he is certifying that his representations are accurate and true to the best of his personal knowledge and belief. *See* Fed. R. Civ. P. 11(b).

Finally, the plaintiff is reminded that every document filed must include a certificate of service showing that a copy was mailed to opposing counsel.

4

The clerk will provide the plaintiff with an amended civil rights complaint form and instructions along with a copy of this order. If the plaintiff fails to submit a proposed second amended complaint by 10/24/2014, the case will be summarily dismissed. The plaintiff has another pending lawsuit, Case No. 14 CV 3273, in which he is represented by counsel. A copy of this order will be sent to plaintiff's counsel in 14 CV 3273.

ENTER:

Date:  9/24/14

Manish S. Shah
U.S. District Court Judge

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6,1
### Eastern Division

Douglas Mock

                            Plaintiff,

v.                                              Case No.: 1:14−cv−03274
                                                Honorable Manish S. Shah

(A. ) Castro, et al.

                            Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, September 3, 2014:

    MINUTE entry before the Honorable Manish S. Shah: Status hearing held and
continued to 11/13/14 at 10:30 a.m. Plaintiff reports that he recently submitted an
amended complaint for case number 13−cv−3274. The court has not received a new
complaint, and Plaintiff was not given leave to file an amended complaint. The operative
complaint in case 13−cv−3274 is the complaint docketed on May 12, 2014. Defendants
have been served with that complaint and shall answer or otherwise plead as previously
scheduled on 09/19/14. If defendants' responsive pleading is a motion to dismiss, it need
not be noticed for presentment. The court will set a schedule on such a motion after
reviewing it. This court's courtroom deputy shall make arrangements with Cook County
Sheriff's Office Department of Corrections to make Plaintiff available for the status
hearing on 11/13/14. Notices mailed by Judicial Staff. (psm, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov*.