IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

DOUGLAS MOCK (#2012-0601098),   )
                                )
            Plaintiff,          )
                                )   Case No. 14 C 3274
      v.                        )
                                )   Judge Manish S. Shah
ALFREDO CASTRO, et al.,         )
                                )
            Defendants.         )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Douglas Mock, an inmate at Cook County Jail, brought this action *pro se* under 42 U.S.C. § 1983, alleging that Chicago Police Officer Castro and Detective Chatman failed to provide him medical care for a swollen jaw, injured knee, and broken hand following his arrest on May 28, 2012. Defendants move for summary judgment. For the reasons discussed below, the motion is granted.

**I. Background**

**A. Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(C). The party opposing summary judgment also shall submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." *Id.*

To defeat summary judgment, the opposing party "must file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted). In the case of any disagreement, the opposing party must reference "affidavits, parts of the record, and other supporting materials." *Id*. "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). If the opposing party's response provides only extraneous or argumentative information, the response will not constitute a proper denial of the fact, and the fact will be admitted. A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Defendants filed a statement of uncontested material facts along with their motion for summary judgment. Dkt. No. 74, Defs. Stmt. of Fact ("DSOF"). Defendants filed and served on Mock a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1. Dkt. No. 75, "Notice Pursuant to Local Rule 56.2."

Mock complied in large part with the form of briefing required by Local Rule 56.1. That is, he responded to Defendants' statement of fact. Dkt. No. 94 ("Pl.'s Opp. to DSOF"). He also filed a statement of additional facts that included citations to the record and exhibits. Dkt. No. 97 ("PSOF"). Some of the facts submitted by Mock are

2

immaterial, *see, e.g.,* PSOF ¶¶ 2, 9, 15, 17, 18; some are argumentative, *see, e.g.,* PSOF ¶¶ 4–7, 19; and others consist largely of unsupported conclusions, *see, e.g.,* PSOF ¶¶ 14, 16. A fact cannot be considered if it is not supported by admissible evidence or where the cited evidence does not support the proffered fact. For example, Mock contends that:

> I had the following injuries and open wounds. (1) swollen right jaw that was clearly obvious FCRL000048-000051. (2) I had open wounds that was bleeding and was not covered or concealed that [Officer Castro] was aware of Exh. (K) pgs. 6-8 and Exh (KI) pgs 1-3. (3) I had a broken finger, 4th metacarpal that was and is noticeable without an x-ray Exh. CCHS pgs. 187 and 477; Exh. (K) pgs. 6-8, and Exh. (KI) 1-3.

PSOF ¶ 1. But the documents cited by Mock show only that, four days after his encounter with Defendants, a physical examination at Cook County Jail revealed that he was in no apparent distress, walked with a "mild limp," had abrasions to his left knee and right elbow, and had an "s/p right 4th MC fx."[1] *See* Dkt. No. 97 at pp. 36-38 (Pl. Ex. KI, June 1, 2012 CHS Primary Care Notes). The fracture had been splinted rather than casted, no swelling was observed, and he was able to move his fingers. *See* Dkt. No. 97 at p. 37. Similarly, x-rays taken in July 2012 showed a "nondisplaced fracture [to] the midshaft fourth metacarpal, age indeterminate." *See* Dkt. No. 97-1 at p. 13 (Pl. Ex. CCHS, July 25, 2012 radiology report from Cook

---

[1] The abbreviation "s/p" is undefined in the record. According to online dictionaries, "S/P" is an abbreviation for "status/post." mediLexicon, http://www.medilexicon.com/abbreviations (last visited Dec. 16, 2016). "Status/post" is clinical shorthand for "a state that follows an intervention." Joseph Segen, *Concise Dictionary of Modern Medicine* 643 (2006). In other words, a follow-up visit.

County Health & Hosp. Sys.). Thus, while Mock provided support for the fact that he suffered an injury prior to June 1, 2012, and that he had abrasions and a fractured finger, the documents do not support Mock's characterization of his injuries as obvious or that the fracture could be observed without an x-ray.

This example is illustrative of some problems in Mock's submissions. The fact statements submitted by Mock often include admissible content as well as inadmissible content within the same paragraph, so the Court has examined each statement for relevancy, evidentiary support, and admissibility, giving deference to Mock's version of the facts where they are properly presented and supported by admissible evidence.

**B.    Facts**

On May 28, 2012, Chicago Police Officers Castro and Gonzalez responded to a dispatch call concerning a battery in the area of 8247 South Marquette Avenue, Chicago, Illinois. DSOF ¶ 5. On arrival at 83rd Street and Marquette Avenue, several people from the neighborhood directed Castro and Gonzalez to an alley, where they found a person identified as J.D. Reed lying on the ground severely battered and unable to speak. DSOF ¶¶ 6, 7. The officers immediately called an ambulance for Reed. DSOF ¶ 8.

Several people on scene identified Plaintiff Douglas Mock as the man who battered Reed. DSOF ¶ 10. Officer Castro was directed to a residence at 8219 South Marquette Avenue, where he found Mock sitting on the porch. DSOF ¶ 11. Castro

4

and Gonzalez advised Mock that he was under arrest and ordered him to stand up and place his arms behind his back. DSOF ¶ 12. Mock complied with the officers' orders, DSOF ¶ 12, and was able to walk on his own albeit with a limp, DSOF ¶ 16; Pl. Opp. to DSOF ¶ 16. Mock did not ask Castro to take him to the hospital nor did he tell Castro or Gonzales that he needed or wanted any medical attention at that time. DSOF ¶¶ 13, 14, 16. Officers Castro and Gonzalez then transported Mock to the police station, DSOF ¶ 17, where Castro placed Mock into a holding room, PSOF ¶ 11. Mock did not ask for medical attention during the ride, DSOF ¶ 17, and it did not appear to Castro that Mock was injured, in pain, or bleeding, DSOF ¶ 15. Castro had no further contact with Mock after he left Mock in the holding room. PSOF ¶ 11.

According to Mock, he had open wounds, his jaw was swollen, his hand was broken, and he was bleeding at the time of his encounter with Castro. PSOF ¶¶ 8, 10. He also says he told Castro that he was in pain, PSOF ¶ 8, but he did not tell Castro that his hand was broken, DSOF ¶ 43; Ex. C to DSOF, Aug. 4, 2015 Dep. of Douglas Mock ("Mock Dep.") 105:19-22.

Detective Chatman was assigned to investigate the battery involving Mock on May 28, 2012. DSOF ¶ 24. Chatman attempted to interview Mock at the police station. *See* DSOF ¶ 29. According to Mock, when Chatman arrived he performed "a visual check of my person." PSOF ¶ 16. At that time, Mock "had a piece of blood soaked tissue stuck to [his] knee" that he had "used to stop the bleeding." PSOF ¶ 16. Mock says that his eyes were "tearful," his jaw was swollen, and he was holding his

5

hand. PSOF ¶ 16. When Chatman attempted to talk to Mock, Mock asked for a lawyer and Chatman ended the interview. DSOF ¶ 29; Pl. Opp. to DSOF ¶ 29. Mock did not tell Chatman he was injured, in pain, or that his hand was broken. DSOF ¶¶ 30, 45. He did not ask Chatman for any medical attention. DSOF ¶¶ 30, 45. Chatman's entire encounter with Mock lasted no more than two minutes, after which he had no further contact with Mock. DSOF ¶ 31.

Mock was fingerprinted and photographed at the police station. *See* DSOF ¶ 23. Mock says that he told the person who fingerprinted him that he was in pain and asked about when he would be taken to the hospital. Pl. Opp. to DSOF ¶ 20; *see* Ex. C to DSOF, Mock Dep. 103:15-23. Three days later—on May 31, 2012—Mock told the lockup keeper that he was in severe pain and asked about when he would be taken to the hospital. PSOF ¶ 13; Pl. Opp. to DSOF ¶ 21.

Chicago police personnel took Mock to South Shore Hospital on May 31, 2012. DSOF ¶ 34. Mock was seen at the hospital by Dr. Kathryn Craig, where he complained primarily of right hand and left knee pain. DSOF ¶¶ 35-36. Craig's examination of Mock's right hand revealed tenderness, only "mild to moderate" swelling, and no loss of sensation to the fingertips or hand. DSOF ¶ 40; Ex. D to DSOF, Nov. 4, 2015 Dep. of Kathryn Craig, M.D. ("Craig Dep.") 31:14-19. An x-ray showed a hairline fracture to the fourth metacarpal but no significant swelling or displacement. DSOF ¶ 40; Ex. D to DSOF, Craig Dep. 31:21-23, 35:8-14. According to Craig, this type of injury is not visible without an x-ray. DSOF ¶ 41. Examination of

Mock's knee revealed soft tissue swelling, but there was no indication in the medical record that the knee had an open wound or that it was bleeding. DSOF ¶¶ 37, 38. Craig testified that she would expect an open wound or bleeding to be noted in the record because it would have required treatment. DSOF ¶ 38. According to Craig, Mock's knee injury was not considered a severe injury. DSOF ¶ 39. Mock was taken back to the police station following treatment at South Shore Hospital. DSOF ¶ 42.

Nearly two years later, Mock filed this lawsuit against Officer Castro and Detective Chatman. Mock alleged in the operative complaint that he was taken into custody by Castro on May 28, 2012, without first being taken to a hospital for treatment of obvious injuries. Dkt. No. 30, 2d Am. Comp. at 4–5. Mock also alleged that Chatman saw him in obvious pain at the police station but failed to arrange for medical treatment. Am. Comp. at 4–5. Mock contends that the failure to receive prompt medical attention caused severe chronic pain, knuckle deformity, and a "locked/frozen shoulder." Am. Comp. at 7.

Defendants Castro and Chatman now move for summary judgment in their favor and against Mock.

### C. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). That is, to survive summary judgment, the nonmoving party must go beyond the pleadings and "identify with reasonable particularity the evidence upon which [he] relies." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). "[B]are allegations not supported by specific facts are not sufficient in opposing a motion for summary judgment." *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1036 (2003).

The Court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the truth of the matter, but instead, determines whether there is a genuine issue of triable fact after considering the facts in a light most favorable to the non-movant. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247-48)

(emphasis in original). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## II. Analysis

Defendants Castro and Chatman argue that they are entitled to summary judgment on two grounds. Defendants contend that they acted reasonably given that Mock did not ask for medical care and that they were unaware of his need for medical attention.

The Fourth Amendment prohibits police officers from unreasonably withholding access to care for an arrestee's medical needs. *See Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Whether officers acted reasonably is determined by four factors: (1) the seriousness of the arrestee's medical needs; (2) whether the officer noticed the arrestee's need for medical treatment; (3) the scope of any requested treatment; and (4) police interests. *Id.* at 530 (citing *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007)). The severity of the medical condition under this standard need not be objectively serious. *Id.* at 531 (citing *Williams*, 509 F.3d at 403). Rather, "the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with . . . the scope of the requested treatment." *Id.* Here, Defendants produced no evidence showing that the interest in maintaining Mock in custody at the police station would have been

9

compromised by taking him for medical treatment, so the Court addresses only the first three factors.

### A. Mock's Medical Needs

Mock contends that he suffered from open and bleeding wounds, a severely swollen jaw, and an obviously broken hand at the time of his encounter with Defendants. But Mock's characterization of his injuries is not supported by the record.

Medical records submitted by both parties show only that Mock suffered from abrasions to his left knee and right elbow, a soft tissue injury to his left knee that his treating physician considered non-severe, mild swelling to his right hand, and a nondisplaced hairline fracture to his right hand that was visible only with an x-ray. *See* DSOF ¶¶ 37, 38, 40, 41; Dkt. No. 97 at pp. 36-38 (Pl. Ex. KI, June 1, 2012 CHS Primary Care Notes). By Mock's own account, he was able to stop any bleeding by putting tissue on his wounds. PSOF ¶ 16. And his mugshot—which Mock points to as evidence of his swollen jaw—shows negligible swelling at most. Dkt. No. 97 at p. 10. There is no evidence that the injuries appeared particularly serious at the time of his encounter with Defendants. In the different context of the Eighth Amendment, courts have held that injuries like a split lip and a swollen cheek do not present an objectively serious medical need, and this suggests that in the present case, a state actor would not reasonably think Mock's presentation indicated a need for medical care. *See Pinkston v. Madry,* 440 F.3d 879, 891 (7th Cir. 2006); *see also Davis v.*

*Jones,* 936 F.2d 971, 972-73 (7th Cir. 1991) (scraped elbow and small cut to temple not serious medical conditions).

### B. Defendants' Notice of Mock's Need for Medical Treatment

Mock did not tell Castro or Chatman that he thought his hand was broken, DSOF ¶¶ 43, 45, but his broken hand is the only injury that arguably required medical attention. Instead, Mock maintains that his injuries were so obvious that Defendants had to have noticed his need for medical attention.

The undisputed medical evidence shows that the fracture to Mock's right hand was not noticeable without an x-ray. In particular, evidence presented by both parties shows that the fracture was nondisplaced, meaning that the bone did not move but maintained its normal alignment.[2] Mock's treating physician also testified that a physical examination of the hand revealed only mild to moderate swelling and an x-ray of the hand revealed only a hairline fracture with no significant swelling or displacement. Ex. D to DSOF, Craig Dep. 31:14-19, 35:8-14. Thus, while there is some evidence that Mock's hand had swollen by May 31, 2012, there is no evidence that any swelling was significant or the fracture readily apparent at the time Defendants saw Mock three days earlier.

Mock's description of his demeanor while with Defendants also does not show that Defendants necessarily noticed (or should have noticed) that he needed medical

---

[2] WebMD, Understanding Bone Fractures – the Basics, http://www.webmd.com/a-to-z-guides/understanding-fractures-basic-information (last visited Dec. 16, 2016).

11

attention for a broken hand or other injury. First, Mock says that he told Castro he "was in pain" when Castro first arrived at his residence, PSOF ¶ 8, but one mention of unspecified pain under the circumstances presented by this case is simply insufficient to have put Castro on notice that Mock needed medical attention. Second, Mock's teary eyes while waiting to be processed at the police station would not have put an officer on notice that Mock needed medical attention given that there are any number of reasons Mock's eyes could have been tearing up. He was, after all, being held pending investigation of criminal charges related to a fight where emotions likely ran high. Third, although Mock contends that Chatman noticed his injuries when Chatman came to interview him, the evidence shows only that Mock had affixed a tissue to the abrasion on his knee, which was no longer bleeding; that he was "holding his hand"; and that, when Chatman attempted to talk to him, Mock asked for an attorney. PSOF ¶ 16, DSOF ¶ 29. Mock did not tell Chatman that he was injured, in pain, or that his hand was broken. DSOF ¶¶ 30, 45. At this stage, taking reasonable inferences in Mock's favor, Chatman noticed that Mock had some scrapes and bruises, but the record contains no evidence from which it may be inferred that Chatman knew Mock's hand was broken or that Mock had sustained any other injury requiring medical attention.

    C.    **Scope of Any Request for Treatment**

Mock did not ask either Castro or Chatman for medical treatment for his broken hand. Mock testified at his deposition that he did not tell Castro that he

needed or wanted medical attention at the time of his arrest, DSOF ¶¶ 13, 14, 16, and he did not ask Castro for medical attention on the ride to the police station, DSOF ¶ 17. Likewise, Mock did not ask Chatman for medical attention at any time. DSOF ¶¶ 30, 45. There also is no evidence that Castro or Chatman knew about any requests for treatment Mock made to other police personnel.

Mock now asserts, however, that he "ask[ed] Castro before he left me in that holding room, I asked him what about my injuries and when was someone coming to see me (also Exh. A at 92:16-24, 93:1-12)." Pl. Opp. to DSOF ¶ 20. Mock did not include this fact in his additional statement of facts, and the citation "Exh. A at 92:16-24, 93:1-12" does not point to any readily identifiable information in the record. The fact therefore is not properly before the Court. Mock's assertion also contradicts his deposition testimony that he asked for medical attention at the police station on only two occasions: "the first time I asked the guy who was doing the fingerprint when I was going to be taken. And then the next time I asked was on the 31st." Ex. C to DSOF, Mock Dep. at 103:15-23, 107:6-8. The Court therefore need not consider this fact. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015) (holding that court may disregard affidavit that conflicts with previous deposition testimony). But even if the fact were allowed, Mock's statement to Castro did not put Castro on notice that Mock was requesting particular medical attention, and does not suggest that Castro's failure to respond was unreasonable.

13

Mock characterizes this case as one for the failure to provide medical care. *See* Dkt. No. 96, Pl. Mem. of Law in Opp. to Summ. J. at 1. The mere failure to provide medical care, however, is not the standard by which Defendants' conduct must be measured. Instead, to survive summary judgment, Mock was required to produce evidence showing that Defendants *unreasonably* withheld medical care. *See Ortiz,* 656 F.3d at 530-31. Mock produced no such evidence.

Construing the facts in Mock's favor, record evidence shows that Mock's only obvious injuries at the time of his encounter with Defendants were a slightly swollen jaw, a mildly swollen hand, and abrasions to his knee and elbow. In other words, Mock exhibited the types of superficial bumps, bruises, and scrapes one would expect after having been in an altercation and for which a non-incarcerated person likely would not seek immediate medical care. The fracture to Mock's hand was not apparent without an x-ray, and he never told Castro or Chatman that he thought his hand might be broken. Any complaint of pain or request for medical treatment was too vague to put Defendants on notice that Mock *needed* medical care, and the mere fact that he might have exhibited some discomfort is insufficient to proceed at this stage. Absent evidence that Defendants knew Mock had an injury requiring medical intervention, Defendants' failure to provide medical care was not unreasonable on the record before the Court.

Because there is no evidence that Defendants' conduct violated the Fourth Amendment, Defendants are entitled to summary judgment in their favor and against Mock.

Mock raised several ancillary matters in opposition to summary judgment. His arguments, however, do not change the outcome of this case. First, Mock contends that he was "deprived discovery including the x-rays and documents bates stamped FCRL000300 through FCRL000315." Pl. Opp. to DSOF ¶ 40; *see also* PSOF ¶ 4. Defense counsel attempted to send Mock a copy of his x-rays and, after counsel's attempts were unsuccessful, Mock was granted adequate opportunity to obtain the x-rays on his own, *see* Dkt. Nos. 80, 87. Mock also attached FCRL000300-315 to his opposition to summary judgment, *see* Dkt. No. 97-1 at pp. 30-45, demonstrating that he did receive the documents. The documents include the radiologist's report from South Shore Hospital, finding soft tissue swelling and no fracture to Mock's left knee as well as an "incomplete transverse hairline fracture [of Mock's right hand] with no significant displacement." Dkt. No. 97-1 at pp. 42-43. Thus, Mock's inability to obtain a copy of his x-rays is an insufficient reason to deny Defendants' motion for summary judgment.

Second, Mock states that he was not advised of the date for Dr. Craig's deposition, PSOF ¶ 4, but the record shows he attended the deposition, Dkt. No. 67. Counsel also was directed to provide Mock a copy of Dr. Craig's deposition transcript.

Dkt. No. 84. Mock therefore had an opportunity to participate in Craig's deposition and to use her testimony at summary judgment.

Third, Mock complains that he was held in excess of 48 hours without a probable cause hearing, probable cause to detain him was unlawfully procured, and he is being maliciously prosecuted. Pl. Opp. to DSOF ¶ 31; PSOF ¶¶ 17, 18. He also says: "I would like to include these issues in my complaint." Pl. Opp. to DSOF ¶ 31. A party may not amend his complaint through arguments made in response to a motion for summary judgment, *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996), and a request to amend may be denied when amendment would be futile, *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 868-69 (7th Cir. 2013). An amendment is futile when it cannot withstand a motion to dismiss, *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992), or a motion for summary judgment, *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001). Here, a document produced by Mock shows that a state-court judge found probable cause to detain him on May 30, 2012, *see* Dkt. No. 97 at pp. 19-20, and there is no indication that probable cause for his arrest was manufactured. Moreover, without a viable federal claim, Mock may not pursue a state-law claim for malicious prosecution in this federal court. Consequently, Mock's request to amend his complaint is denied.

Finally, Mock asserts that neither Castro nor Chatman gave him *Miranda* warnings. PSOF ¶¶ 9, 15. Mock attempted to add this claim in the past but the claim was not included in the operative complaint. In any event, Mock identified no facts

16

giving rise to a claim arising from Defendants' alleged failure to administer *Miranda* warnings. *See Sornberger v. City of Knoxville*, 434 F.3d 1006, 1024-26 (7th Cir. 2006) (citing *Chavez v. Martinez,* 538 U.S. 760, 766-67 (2003)) (explaining that a failure to give *Miranda* warnings does not give rise to claim under 42 U.S.C. § 1983 unless the suspect's coerced statements were used against him during a criminal proceeding). Thus, to the extent Mock seeks leave to amend his complaint to include such a claim, his request is denied.

### III. Conclusion

Defendants' motion for summary judgment [72] is granted and judgment is entered in favor of Defendants. Final judgment shall enter. This case is terminated.

If Mock wishes to appeal this dismissal, he may file a notice of appeal in this court within thirty days from entry of judgment. Fed. R. App. P. 4(a)(1)(A). If Mock chooses to appeal, he will be responsible for paying the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Mock may accumulate a strike under 28 U.S.C. § 1915(g).

ENTER:

Date: 12/16/2016

_____
Manish S. Shah
United States District Judge